## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SHARIS MCCRARY and DARNETTA TYUS,
  Plaintiffs,

v.

CITY OF COLLEGE PARK, GEORGIA,
  Defendant.

Civil Action No.
1:23-cv-01733-SDG

## OPINION AND ORDER

This matter is before the Court on the Final Report and Recommendation (R&R) [ECF 17], entered by United States Magistrate Court Judge Christopher C. Bly, recommending that Defendant City of College Park, Georgia's motion to dismiss [ECF 9] and motion to sever [ECF 10] be denied. Defendant filed objections to the recommendation that the case be dismissed, but not to the recommendation that the motion to sever be denied [ECF 19]. For the following reasons, Defendant's objections are **OVERRULED** and the R&R is **ADOPTED in its entirety**. Defendant's motion to dismiss and motion to sever are **DENIED**.

I.      **Background**

The Court incorporates by reference the thorough recitation of the facts as set forth in the R&R.[1] For purposes of this Order, the Court provides a brief summary of the pertinent facts as follows.[2]

This case is about the pervasive sex- and race-based discrimination allegedly committed by the City of College Park's government. Plaintiffs Sharis McCrary and Darnetta Tyus assert that, during their respective tenures as Deputy Chief of Police and City Manager for College Park, they faced a deluge of discriminatory behavior, which created an untenable working environment and led to Tyus's firing.

College Park, a municipality in Fulton County, Georgia is governed by a city charter, under which a four-member city council is the sole policymaking authority.[3] This City Council appoints a City Manager who oversees College Park's daily operations.[4] In turn, the City Manager appoints heads of departments,

---

[1]   *See Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (noting that, to the extent there are no specific objections to factual findings by a magistrate judge, there is no requirement that the district court review those findings *de novo*).

[2]   *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[3]   ECF 1, ¶¶ 13–15.

[4]   *Id.* ¶ 17.

subject to approval by the City Council.[5] One such position, the Chief of Police, reports directly to the City Manager and has authority over the daily management of the police department.[6] Traditionally, the Chief has been able to exercise this authority independently and without interference from the Council. [7] At the time of the events underlying Plaintiffs' complaint, the four members of the Council consisted of two white men, Ambrose Clay and Ken Allen, and two Black men, Joe Carn and Roderick Gay.[8] The Mayor was Bianca Motley Broom, a Black woman.[9]

McCrary alleges that, over her twenty-year career at the College Park police department, she rose through the ranks from patrol officer to become the highest-ranking woman in department history in 2018, when she was selected as Deputy Chief.[10] In the months following her promotion, there was much speculation that McCrary would become College Park's first black female Police Chief.[11] Several community advocates even petitioned for her to be appointed to the position.[12]

---

[5]   *Id.*

[6]   *Id.* ¶ 18.

[7]   *Id.* ¶ 19.

[8]   *Id.* ¶ 16.

[9]   *Id.*

[10]   *Id.* ¶¶ 20–21.

[11]   *Id.* at 21.

[12]   *Id.*

In 2021, the then-Chief of Police was made to resign.[13] In such situations, the decades-long custom in College Park had been to elevate the Deputy Chief to interim Chief until an official hiring process could be completed.[14] Plaintiffs allege that did not happen here. Instead of elevating McCrary to interim Chief, College Park hired a white male who had retired from the police department ten years prior to be interim Chief.[15] McCrary asserts that she was finally appointed interim Chief after several months of community outrage.[16] She also alleges that her tenure as interim Chief was rife with constant inference from the City Council.[17]

In February 2022, Darnetta Tyus was appointed City Manager under a three-year contract.[18] She was immediately charged with finding a candidate for the Police Chief position.[19] Tyus alleges that, during her brief stint as City Manager, she was constantly undermined by the City Council. Rather than liaise with Tyus—which had been the practice with past City Managers—the councilmen purportedly sidestepped her to engage directly with department

---

13   *Id.* ¶ 24.

14   *Id.* ¶ 25.

15   *Id.* ¶¶ 25–26.

16   *Id.* ¶¶ 27, 30.

17   *Id.* ¶¶ 37–40.

18   *Id.* ¶ 32.

19   *Id.* ¶ 33.

heads.[20] These department heads reportedly noted to Tyus that the Council treated her far less deferentially than they had the last City Manager, a black male.[21]

At the end of May 2022, Tyus informed the Council that, within a few weeks, she would provide a final list of candidates for the Chief position.[22] But the Council instead voted to terminate Tyus's contract.[23] Tyus was replaced by Jackson Myers, a white male.[24]

As City Manager, Myers interacted with various department heads—including McCrary. His behavior towards McCrary was allegedly very disrespectful. Myers was allegedly openly dismissive of McCrary and would frequently delay, deny, or even ignore her leave requests and expense reimbursements.[25]  McCrary filed an internal complaint against Myers with the Council in late summer 2022.[26] McCrary also discussed Myers's behavior with councilmen on several occasions, explicitly stating her belief that Myers's

---

[20]   *Id.* ¶ 35.

[21]   *Id.* ¶ 36.

[22]   *Id.* ¶ 44.

[23]   *Id.* ¶ 45.

[24]   *Id.* ¶ 50.

[25]   *Id.* ¶¶ 50–53.

[26]   *Id.* ¶ 54.

disrespect towards her was due to her gender.[27] In response, the councilmen purportedly responded that if McCrary wanted to be Chief, she had to "take it."[28]

McCrary alleges that, in early fall of 2022, Colonel David Block, a white man, presented her with a deal authorized by the Council: McCrary could become Chief of Police—but in name only.[29] Under this "deal," McCrary contends that Block would have been appointed Deputy Chief, and be the real decisionmaker and the police department's primary contact with the Council.[30] According to McCrary, she would simply have been the "public face" of the department.[31] Further, McCrary alleges that Block went so far as to threaten that if McCrary declined the deal, the Council would make the same offer to another Black female candidate to make it "impossible" for McCrary to bring legal action against the Council.[32] McCrary rejected the "deal."[33] She contends that the offer was a "fundamental encroachment" on the Chief of Police position, and that such an offer "would never have been imposed on" a male candidate for the same role.[34]

---

[27]  *Id.*

[28]  *Id.*

[29]  *Id.* ¶ 56.

[30]  *Id.*

[31]  *Id.*

[32]  *Id.* ¶ 57.

[33]  *Id.* ¶ 58.

[34]  *Id.*

That same fall, Myers appointed a search committee to find and hire a candidate for Police Chief.[35] The committee formally interviewed McCrary in November 2022, and formally rejected her from the role three weeks later.[36] Since then, McCrary has allegedly been excluded on a regular basis from sensitive department decisions in her position as Deputy Chief.[37]

McCrary and Tyus brought this suit against College Park, asserting claims of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Title VII) and claims of discrimination under the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983. College Park moved to dismiss the complaint[38] and to sever Plaintiffs' claims.[39] The R&R recommends denial of both motions.[40]

---

[35] *Id.* ¶ 59.

[36] *Id.* ¶¶ 60–62.

[37] *Id.* ¶ 65.

[38] ECF 9.

[39] ECF 10.

[40] ECF 17. Defendant did not object to the recommendation that its motion to sever be denied. In the absence of objections, and under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, undersigned reviewed that portion of the R&R for plain error and found none. Accordingly, undersigned **ADOPTS** the R&R's recommendation that the motion to sever be denied.

## II.     Legal Standard

A party challenging an R&R issued by a federal magistrate judge must file written objections that specifically identify the portions of the proposed findings and recommendations to which an objection is made and must assert a specific basis for the objection. *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009). The district court must "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990).

## III.     Defendant's Objections to the R&R

Defendant posed four objections to the R&R's recommendation that the motion to dismiss be denied. Upon a *de novo* review of these portions of the R&R, the Court **OVERRULES** Defendant's objections.

### A.     McCrary has plausibly alleged that the City Council improperly discriminated against her on the basis of her race and sex.

The R&R recommends denying the motion to dismiss McCrary's race and sex discrimination claims. In Count I, McCrary alleges that Defendant discriminated against her on the basis of her sex and race in violation of the motivating-factor provision of Title VII when it failed to appoint her as Chief of

Police.[41] In Count III, McCrary alleges that Defendant discriminated against her for reasons at least partly motivated by her sex.[42]

"Discrimination claims brought under Title VII and § 1983 are typically categorized as either mixed-motive or single-motive claims." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016). In mixed motive cases like this one, at a minimum, a Title VII/Section 1983 plaintiff must ultimately be able to show that "(1) the defendant took an adverse employment action against the plaintiff; and (2) [a protected characteristic] was *a* motivating factor for the defendant's adverse employment action." *Quigg*, 814 F.3d at 1239 (alteration in original) (emphasis added). At the motion to dismiss stage, when asserting "a mixed motive (or motivating factor) claim . . . a plaintiff need only show that a protected consideration contributed in some way to the outcome—even if it ultimately changed nothing." *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1339 (11th Cir. 2023). And, in *Matthew v. Columbia County*, 294 F.3d 1294 (11th Cir. 2002), the Eleventh Circuit held (on summary judgment) that where the alleged discriminatory decision is made by multiple decisionmakers, a plaintiff must show that a majority of the decision-making body acted with discriminatory motive (the "majority motive" rule).

---

[41]   ECF 1, ¶ 69.

[42]   *Id.* ¶ 77.

Defendant raises various objections related to the R&R's application of the majority-motive rule. First, Defendant contends that the R&R erred to the extent that it suggests the majority-motive rule does not apply at the motion to dismiss stage.[43] The Court need not address this argument because the R&R did not make any such conclusive determination. Rather, it noted that none of the cases Defendant cited, but for *McCarthy v. City of Cordele*, No. 1:22-CV-72 (LAG), 2023 WL 2783679, at *4–6 (M.D. Ga. Mar. 31, 2023), *appeal filed*, No. 23-11036 (11th Cir. Mar. 31, 2023), were decided on motions to dismiss. This tends to suggest that dismissal on majority-motive grounds at the motion to dismiss stage is usually premature. But Judge Bly made no substantive determination that the rule does not apply at the pleading stage. Defendant also objects to the R&R's failure to conclusively determine that the majority-motive rule applies to mixed motive claims like McCrary's.[44] Again, this Court need not address Defendant's contention in this regard because as discussed below, the R&R found that even assuming it does apply, McCrary has met her burden.

Lastly, Defendant argues that the R&R erred in finding that McCrary sufficiently alleged that a majority of the Council acted with an impermissible motive. Specifically, Defendant asserts that the R&R is internally inconsistent by

---

[43]   ECF 19, at 2–3.

[44]   *Id.* at 3–4.

making the "express finding that, '[b]ased on the complaint, it is not clear how many Council members participated in the ratification of Myers's decision to hire Rogers as Chief (instead of McCrary) or how the members voted.'"[45] But McCrary need not allege exactly *which* Council members voted for Rogers—she need only plausibly allege facts that suggest discriminatory intent on behalf of multiple City Council members and the Council as a whole. *See Bivins v. Franklin*, No. 1:22-CV-4149-WMR, 2023 WL 6194104, at *10 (N.D. Ga. Aug. 10, 2023) (denying a motion to dismiss as to the county defendant where the plaintiff alleged that a majority of the board of commissioners took adverse employment actions against the plaintiff with a shared unconstitutional motive), *appeal filed*, No. 23-13029 (11th Cir. Sept. 8, 2023). McCrary has done that. The R&R exhaustively recounts the factual allegations suggesting that her race and sex were improperly considered by at least some of the Council members:

> Mayor Broom asked McCrary to make a public statement that she had no ambition to become Chief of Police. When McCrary declined to do so, Mayor Broom commented that McCrary[]being promoted "was not going to happen." McCrary interpreted Broom's comment to mean that the all-male City Council would resist appointing a female, or a Black female, Chief. While McCrary served as interim Chief, a Council member told her that he was not inclined to support the appointment of a female Chief of Police because of what happened the last time College Park put a woman in

---

45    *Id.* at 4.

> charge of a public safety department, referencing the unsuccessful tenure of a female fire chief. In early fall of 2022, Colonel David Block, a White male senior officer, informed McCrary that the City Council would support her appointment as Chief if she would appoint Block as Deputy Chief and would allow for him to be the police department's primary contact with the Council. Block explained that if McCrary declined the deal the Council would select another Black female candidate as Chief to make it impossible for McCrary to bring a legal claim.[46]

McCrary need not show, at this stage, exactly which Council members, or exactly how many, acted with a discriminatory motive. This would be far too burdensome and impossible to know without the benefit of discovery. And, that McCrary did not disclose which Council members made allegedly discriminatory comments does not change the Court's analysis at this stage. She has plausibly alleged that multiple decision makers and the City Council as a whole improperly considered her race and sex. At this stage, that is sufficient.

**B.  While the "no reasonable person" standard is a substantive standard, the R&R did not err in its conclusion that McCrary need not satisfy it at the motion to dismiss stage.**

Defendant objects to the R&R's determination that the "no reasonable person" standard does not apply at the pleading stage.[47] First, undersigned is skeptical that the "no reasonable person" standard applies to mixed-motive cases.

---

46  ECF 17, at 14–15, 18–19.

47  ECF 19, at 5.

The Eleventh Circuit has held that *under a McDonnell Douglass pretext analysis*, "the difference in qualifications [between the plaintiff and the promoted candidate] must be so glaring that no reasonable impartial person could have chosen the candidate selected for the promotion in question over the plaintiff." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 772 (11th Cir. 2005); *see also Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) ("[A] plaintiff [proving pretext] must show that the disparities between the successful applicant's and his own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'"). However, *McDonnell Douglas* does not apply in mixed-motive cases like this one. *Quigg*, 814 F.3d at 1237 (holding that *McDonnell Douglas* is "fatally inconsistent with the mixed-motive theory of discrimination because the framework is predicated on proof of a single, 'true reason' for an adverse action.").

But even assuming this standard applies to mixed-motive cases, undersigned agrees with the R&R that at this stage, McCrary need only allege facts that plausibly support the inference that the Council acted discriminatorily in its failure to promote her to Police Chief, nothing more. As the R&R notes, "requiring a plaintiff to plead the specifics about the person who was selected over her, i.e., to definitively meet the 'no reasonable person' standard, would be particularly

onerous at this point."[48] In fact, it would impermissibly heighten the pleading standard far beyond what is required at this stage. Defendant pointed to no case law where any court has applied this standard on a motion to dismiss.

### C.   McCrary has plausibly alleged discriminatory retaliation.

Defendant objects to the R&R's conclusion that McCrary has plausibly alleged that Defendant retaliated against her for engaging in protected activity by failing to appoint her as Chief of Police.[49] McCrary alleges that she engaged in the protected activity of (1) making internal complaints of sex-based discriminatory conduct by interim City Manager Myers and (2) rejecting a power-sharing arrangement that she reasonably believed would have placed restrictions on the Police Chief role that would have never been imposed on a male Chief.

McCrary has pled sufficient facts to support a Title VII retaliation claim. Judge Bly correctly stated the law on Title VII retaliation claims in the R&R[50] and the Court will not repeat that thorough recitation in detail here. In short, to prevail on a *prima facie* claim of retaliation, McCrary must prove that (1) she engaged in statutorily protected activity, (2) she suffered an adverse action, and (3) there was a causal link between the protected activity and the adverse action. *Jefferson v.*

---

[48]   ECF 17, at 21.

[49]   *Id.* at 27.

[50]   *Id*. at 24–25.

*Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018). At this point in time, while McCrary "need not allege facts sufficient to make out a . . . *prima facie* case, [she] must provide enough factual matter (taken as true) to suggest discriminatory retaliation." *Marshall v. Mayor & Alderman of Savannah*, 366 F. App'x 91, 100 (11th Cir. 2010) (internal citations and quotations omitted).

With respect to the first element, the Court concludes McCrary sufficiently alleged that she engaged in protected activity. "Statutorily protected expression includes internal complaints of discrimination to superiors, complaints lodged with the Equal Employment Opportunity Commission, and discrimination-based lawsuits." *Walton-Horton v. Hyundai of Ala.*, 402 F. App'x 405, 408 (11th Cir. 2010). As noted in the R&R, McCrary alleges that she lodged an internal complaint with the City Council and also discussed Myers's behavior towards her with the City Council on several occasions.[51] Here, the Court cannot agree with Defendant's position that McCrary fails to allege that her internal complaints specified race- or sex-based discrimination. Title VII equally protects "individuals who have filed formal complaints" and those "who informally voice complaints to their superiors." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 n.2 (11th Cir. 2002). When speaking with the City Council on those occasions, McCrary

---

[51]   *Id*. at 25.

expressed her belief that Myers's actions towards her were "rooted in" her gender.[52] Moreover, the Court agrees with McCrary that, at this point, "reasonable interpretations of the evidence must be made in McCrary's favor."[53] The Court concludes that McCrary has sufficiently alleged that she engaged in statutorily protected activity.

Regarding the second element, the Court also finds that the facts establish an adverse employment action was taken against McCrary—that Defendant failed to appoint McCrary as Chief of Police—so the Court will not discuss this element in detail. "[G]enerally the denial of a promotion is an adverse employment action." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001). McCrary, after working for the College Park police department for almost two decades, was interviewed for Chief of Police and not accepted for the position. The Court concludes that McCrary sufficiently alleged that she suffered an adverse employment action.

Finally, the Court finds that the facts alleged by McCrary demonstrate a causal link between her protected activity and the adverse action. "To establish that causal connection, a plaintiff need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Servs., Inc.*, 176

---

[52]   ECF 1, ¶ 54.

[53]   ECF 20, at 8.

F.3d 1346, 1354 (11th Cir. 1999) (internal citations omitted). "A 'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). Here, McCrary has sufficiently alleged facts that establish this close temporal proximity. McCrary filed her internal complaint in late summer 2022.[54] McCrary also discussed Myers's behavior on several other occasions, which occurred after he was appointed interim City Manager in approximately June 2022.[55] Within less than six months, McCrary was denied the position of Police Chief.[56] While not immediately connected, the Court concludes that this timeframe, along with the actions discussed below, is one of close-enough temporal proximity to establish causation at this stage.

The Court finds that there are other alleged facts that bolster the causal connection. "[A]n employee may prove retaliation with any circumstantial evidence that creates a reasonable inference of retaliatory intent." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1310 (11th Cir. 2023). Here, when McCrary discussed Myers's treatment of her with the councilmen and made it "clear that

---

[54]   ECF 1, ¶ 54.

[55]   *Id.* ¶¶ 47, 50, 54.

[56]   *Id.* ¶ 62.

she believed Myers's disrespect was rooted in her gender," the councilmen allegedly responded that "she needed to 'take it' if she wished to be selected as Chief."[57] Soon after filing her internal complaint, McCrary was allegedly offered the figure-head arrangement. Under this arrangement, which according to the complaint was the culmination of weeks of harassment she faced, McCrary would become the Chief of Police—but in name only. The deputy chief, a white man, would be the "department's primary contact with the Council, and would be the principal behind-the-scenes decisionmaker."[58] McCrary declined this deal because she viewed it as "a fundamental encroachment" on the position and she believed this arrangement "would never have been imposed on a male Chief."[59] A few weeks later, McCrary was formally interviewed and denied the position. Although McCrary was technically offered the position of Chief through this alleged figure-head arrangement, the Court can draw the reasonable inference that the City Council never intended to allow McCrary to become the Chief of Police, with all of the powers and responsibilities that accompany the role. McCrary's rejection of this arrangement, along with her formal and informal complaints about the undermining and harassing treatment she faced, is sufficient circumstantial

---

[57] *Id.* ¶ 54.

[58] *Id.* ¶ 56.

[59] *Id.* ¶ 58.

evidence that creates a reasonable inference of intentional retaliatory intent. The Court is satisfied that McCrary has sufficiently alleged facts that show a causal link between her protected activity and her rejection from the position of Police Chief. Accordingly, the Court concludes McCrary has sufficiently alleged facts supporting her retaliation claim.

### D.   Tyus's sex discrimination and 1983 claims

Finally, Defendant objects to the R&R's conclusion that Tyus stated a plausible claim for sex discrimination under Title VII and § 1983 based solely upon her allegation that other employees told her that the Council was less deferential to her than her male predecessor and the fact that the City named a male employee as interim City Manager after her termination.[60] Defendant focuses on the fact that the Council that fired Tyus is the same Council that hired Tyus. This, it claims, cannot possibly give rise to a claim of discrimination.

But that is not true. This fact may well be persuasive evidence at a later stage, but it alone does not defeat Tyus's claim as pled. Defendant cites to *Cole v. Mountain View Marketing., Inc.*, 744 F. Supp. 2d 1240, 1251 (S.D. Ala. 2010), where the court noted at the summary judgment stage that "[t]he Eleventh Circuit has explained that the fact that the same person hired or promoted the plaintiff . . . is the person who fired or demoted the plaintiff gives rise to a permissible inference

---

[60]   ECF 19, at 9.

that no discriminatory animus motivated the defendant's actions."[61] That a court *can* draw a permissible inference at summary judgment does not mean that on a motion to dismiss, a Court *must* draw such an inference, particularly where there are other allegations of discrimination and where the court must draw all inferences in Tyus's favor.

The remainder of Defendant's objection is simply that Tyus has alleged "absolutely no facts aside from her own gender that would attribute this behavior to sex discrimination."[62] The Court disagrees. Tyus offered the following facts in support of her claim:

> In February 2022, Tyus was hired as the City Manager on a three-year contract. The City Council tasked her with reviving the search for a Chief of Police. Within a month, Tyus hired an Atlanta-based Black female executive search consultant to lead the search efforts. From the beginning of her tenure, Tyus encountered obstacles from the all-male Council, who persisted in inserting themselves into daily municipal operations. Council members began to bypass Tyus and directly engage the heads of Defendant's municipal departments. Tyus also alleges that various female staffers and department heads informed Tyus that she was being treated very differently by the Council than her male predecessor, Terrance Moore. Approximately a week after Tyus

---

[61]  Defendant failed to note that in the same Eleventh Circuit case which *Cole* cites, the court cabined this inference by noting that "it is the province of the jury rather than the court, however, to determine whether the inference generated by 'same actor' evidence" is nonetheless overcome by a plaintiff at the pretext stage. *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998).

[62]  ECF 19, at 10.

> updated the Council on the Chief of Police search, Mayor Broom told Tyus that the City Council had voted to terminate her contract. Tyus had worked for Defendant for around four months. She was provided no explanation for her termination.[63]

Though, as the R&R notes, it might be a close call, Tyus has put forth sufficient facts to draw an inference of discrimination.

## IV.   Conclusion

The Court **ADOPTS** the R&R in its entirety [ECF 17] and **OVERRULES** Defendant's objections. The motion to dismiss [ECF 9] and motion to sever [ECF 10] are **DENIED**. Defendant shall file its Answer to the Complaint within 21 days from entry of this Order.

**SO ORDERED** this 31st day of March, 2024.

Steven D. Grimberg
United States District Judge

---

[63]   ECF 17, at 31–32 (citations omitted).